**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| HAYS TUG & LAUNCH SERVICES, INC., et al., | 1:18-cv-02034-NLH-JS |
| Plaintiffs, | **OPINION** |
| v. | |
| DRAW EVENTS, LLC, and CRAIG SAMBORSKI, | |
| Defendants. | |

---

**APPEARANCES**:

MARY ELISA REEVES
REEVES MCEWING LLP
1004 S. FRONT STREET
PHILADELPHIA, PA 19147

    *On behalf of Plaintiffs*

JOSIAH A. KNAPP
JOSIAH KNAPP LAW PC
100 SOUTH BROAD STREET
SUITE 930
PHILADELPHIA, PA 19103

    *On behalf of Defendants*

TERESA M. LENTINI
FLORIO PERRUCCI STEINHARDT & CAPPELLI
1010 KINGS HIGHWAY SOUTH - BUILDING 2
CHERRY HILL, NJ 08034

    *On behalf of interested parties Cooper's Ferry Partnership, Inc. and New Jersey Aquarium, LLC d/b/a Adventure Aquarium*

**HILLMAN**, District Judge

    In this admiralty case, pending before the Court are two

motions: Defendants' Motion to Dismiss Plaintiffs' Complaint and Vacate the Writ of Attachment [24] and Defendant Craig Samborski's Motion for Sanctions [38]. For the reasons expressed below, Defendants' motions will be denied.

## BACKGROUND

Plaintiffs, Hays Tug & Launch Services, Inc. ("Hays Tug"), Pollution Solutions of New Jersey, LLC d/b/a River Services ("River Services"), McAllister Towing of Philadelphia, Inc. ("McAllister Towing") and General Marine & Industrial Services, Inc. ("GMIS"), provided services during the 2015 Tall Ship Challenge ("Tall Ship event"), which was organized and managed by Defendant Draw Events, LLC ("Draw Events"). Draw Events was under contract with the event hosts, Interested Parties Cooper's Ferry Partnership and the Adventure Aquarium, as well as the Delaware River Waterfront Corporation ("DRWC") and the Independence Seaport Museum.

Draw Events subcontracted with: Hays Tug to provide a barge and towing services; McAllister Towing to provide towing services to move vessels within the Delaware River; River Services to provide a barge, towing, repair services and supplies required to maintain the barges and assist in the emergency recovery, transportation and repair of "Big Mama Duck," a large floating rubber duck that deflated in the water during the event; and GMIS to provide a crane and labor to

2

transport, recover and repair "Big Mama Duck." Plaintiffs claim that they have not been paid for their services by Draw Events despite repeated demands.

As a result of a dispute regarding unpaid invoices from the Tall Ship event, on March 9, 2017, Draw Events filed a lawsuit in the Eastern District of Pennsylvania (2:17-cv-1050-MSG), based on diversity jurisdiction against Cooper's Ferry, DRWC, Herschend Family Entertainment Corporation, Adventure Aquarium, and Independence Seaport Museum ("Tall Ship Litigation"). On January 29, 2018, after settlement had been reached in the Tall Ship Litigation but a few days before the paperwork was finalized, Plaintiffs here sought to intervene in the Tall Ship Litigation seeking to assert a claim for their unpaid invoices. On February 7, 2018, Judge Mitchell J. Goldberg, U.S.D.J., denied their motion to intervene determining, in part, that their attempt to intervene was untimely. Judge Goldberg dismissed the action the same day.

On February 13, 2018, Plaintiffs filed suit in this Court, contending admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, F.R.C.P. 9(h), and Supplemental Admiralty Rule B ("Rule B"). On that same date, this Court granted Plaintiffs' motion to serve process of a maritime garnishment pursuant to Rule B, which provides: "If a defendant is not found within the

district when a verified complaint praying for attachment and
the affidavit required by Rule B(1)(b) are filed, a verified
complaint may contain a prayer for process to attach the
defendant's tangible or intangible personal property – up to the
amount sued for – in the hands of garnishees named in the
process." Plaintiffs sought to garnish any settlement funds
from the Tall Ship litigation in the hands of Cooper's Ferry and
Adventure Aquarium.[1]

  To that end, Plaintiffs served Cooper's Ferry with a writ

---

[1] On the same day Plaintiffs filed their case here, Plaintiffs
filed an identical suit in the Eastern District of Pennsylvania
against DRWC and the Independence Seaport Museum because those
entities are located in Pennsylvania. See HAYS TUG & LAUNCH
SERVICES, INC. et al v. DRAW EVENTS, LLC et al., 2:18-cv-00601-
MSG. Judge Goldberg granted Plaintiffs' motion to serve a
maritime garnishment, but at the same time issued an order to
show cause as to why the writ of attachment and garnishment
should not be vacated. (2:18-cv-00601-MSG, Docket No. 10.) On
February 16, 2018, Judge Goldberg vacated the writs of
attachment and directed the garnishees' counsel to provide
information on the timing of the service of the writs on the
garnishees, and when counsel mailed out the settlement check.
(2:18-cv-00601-MSG, Docket No. 13.) After receiving garnishees'
counsel's submission, on February 22, 2018, Judge Goldberg
ordered Plaintiffs to notify the court within 14 days how they
wished to proceed in that matter, specifying "whether they wish
to proceed against Defendants on an in personam basis; whether
they wish[] to seek recovery through this action against the
Garnishees named in their Verified Complaint; or whether they
wish to dismiss this action." (2:18-cv-00601-MSG, Docket No.
19.) Plaintiffs responded on March 7, 2018, requesting that the
Pennsylvania action be stayed or held in suspense while they
pursued discovery in the New Jersey action. (2:18-cv-00601-MSG,
Docket No. 21.) Samborski filed a motion for sanctions similar
to the one filed here on August 10, 2018, which is still pending
as of the date of this Opinion. (2:18-cv-00601-MSG, Docket No.
26.)

of maritime attachment and garnishment at 3:39 p.m. on February 13, 2018. Plaintiffs served Adventure Aquarium with a writ of maritime attachment and garnishment at 3:44 p.m. on February 13, 2018.

At the time the writs were served, the $50,000 check made out to Draw Events by Cooper's Ferry for the settlement of the Tall Ship Litigation – the "property" of Draw Events that Plaintiffs sought to garnish - was in the New Jersey office of the attorney for the defendants in the Tall Ship Litigation. Cooper's Ferry had prepared the check on February 5, 2018, drawn on its account, on behalf of all the defendants in the Tall Ship Litigation. Counsel for Cooper's Ferry received the check in her office some time before February 9, 2018. At 4:04 p.m. on February 13, 2018, FedEx picked up the package containing the settlement check from the attorney's office destined for Draw Events in Minnesota.

Plaintiffs argue that the writ of attachment successfully garnished the $50,000 because (1) it was still in the hands of Cooper's Ferry – the garnishee - by way of its attorney, when it was served, and (2) the funds did not transfer from Cooper's Ferry's possession until Draw Events deposited it several days later and the checked subsequently cleared.

In contrast, Draw Events and the garnishees Cooper's Ferry and Adventure Aquarium argue that the writs of attachment did

not successfully garnish the $50,000 because it was not in the garnishees' possession when they were served with the writs. Rather, it had been out of Cooper's Ferry's control since February 5, 2018 when it was sent to its attorney for transmittal to Draw Events.[2]

Draw Events further argues that without a valid writ of attachment to its property, Plaintiffs would be required to establish personal jurisdiction.  Draw Events also argues that the funds Plaintiffs have endeavored to attach, as well as their underlying dispute, are basic contract disputes and not maritime in nature, and therefore with no valid claim sounding in admiralty, the Rule B writs of attachment were unavailable to Plaintiffs in the first place.

In addition to the other bases for dismissal of Plaintiffs' complaint, Defendant Craig Samborski, the sole member of Draw Events, seeks his dismissal on an individual basis because Draw Events, and not Samborski individually, entered into the relevant contracts with the parties.  He has also filed a motion for sanctions for being named a defendant individually.

Plaintiffs have opposed Defendants' motions on all bases.

---

[2] These parties also point to Cooper's Ferry's and Adventure Aquarium's CFOs' more general certifications that they are not in possession, custody, or control or legal title of any property of Draw Events or Craig Samborski.

<u>**DISCUSSION**</u>

**A.   Standard for Jurisdiction**

Plaintiffs assert that this Court may exercise subject matter jurisdiction over the action based on admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, F.R.C.P. 9(h), and Supplemental Admiralty Rule B.

**B.   Analysis**

"A Rule B attachment is a *quasi in rem* proceeding which permits the assertion of jurisdiction over a defendant's property located within the district even though the court has no *in personam* jurisdiction over the defendant." <u>Kabushiki Kaisha v. Kraiem</u>, 2015 WL 5770504, at *3 (D.N.J. 2015) (citing <u>Western Bulk Carriers, Pty. Ltd. v. P.S. Internat'l, Ltd.</u>, 762 F. Supp. 1302, 1305 (S.D. Ohio 1991); <u>Transamerica Leasing Inc. v. Frota Oceanica E. Amazonica, S.A.</u>, 1997 WL 834554, *2 (S.D. Ala. 1997)).

Four prerequisites must be met by a plaintiff to secure a writ of attachment: (1) the plaintiff has an *in personam* claim against the defendant; (2) the defendant cannot be found within the district where the action is commenced; (3) property belonging to the defendant is present within the district; and (4) there is no statutory or general maritime law proscription to the attachment.  <u>Id.</u> (citing <u>Western Bulk Carriers</u>, 762 F. Supp. at 1306).

"One of the primary grounds for the historical development of Rule B attachments was that '[a] ship may be here today and gone tomorrow.'"  Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 70 (2nd Cir. 2009) (quoting Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d 627, 637 (9th Cir. 1982)) (citing Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. De Navegacion, 732 F.2d 1543, 1547 (11th Cir. 1984) (noting that a "relevant commercial ... consideration[]" relating to Rule B practices is that "a ship's ability to dock, unload cargo, and fill its hold with goods intended for another destination - all within twenty four hours - imposes tremendous pressure on creditors desiring to attach a vessel or property located aboard")).  Of course, here Plaintiffs did not seek to arrest a ship or its cargo, but Rule B attachments are not so narrow.  The general point holds true; that it is the nature of Rule B attachments that the property's presence in the district – no pun intended – be fleeting.

For the reasons set forth below this Court will not vacate the writs of attachment at this time and will deny Defendants' motions without prejudice.  The Court will address in turn each of the four requirements for a valid writ of attachment, and then discuss Samborski's arguments for dismissal of Plaintiffs' claims against him individually, as well as his request for sanctions.

**1. Whether Plaintiffs have an *in personam* claim against Defendants**

It is undisputed that Plaintiffs have asserted *in personam* claims against Defendants. Thus, the first factor is met. See Utsch's Marina, Inc. v. Motor Vessel, a 2000 Grady White, Model No. 232, 2011 WL 181120, at *1 (D.N.J. 2011) ("[W]ith respect to maritime claims, 'a party who may proceed *in rem* may also, or in the alternative, proceed *in personam* against any person who may be liable.'") (citing Supp. R. for Admiralty or Mar. Cl. & Asset Forfeiture Actions C(1)(b); Constr. Hands, Inc. v. Baker, 446 F. Supp. 2d 88, 90 (N.D.N.Y. 2006) ("Claims for a maritime lien may be maintained both *in rem* against the vessel, and *in personam* against the owner.")).

**2. Whether Defendants can be found within this District**

We start this analysis with what appears to this Court to be an important distinction. Although related issues both factually and legally, whether a defendant may be "found" within the District for purposes of Rule B and whether the same defendant may be subject to personal jurisdiction in the forum are distinct issues. It seems likely that a defendant not subject to personal jurisdiction will not be found within the District for purposes of Rule B attachments. But it does not follow that the converse is necessarily true; i.e., that the property of a defendant may not be attached under Rule B if the

defendant is subject to the specific or general jurisdiction of
the Court.  This is because being "found" is a narrow factual
test related to traditional concepts of service of process and
distinct from the more general and abstract principles of
personal jurisdiction minimum contacts and due process.  Stated
directly, a defendant may be subject to personal jurisdiction in
the forum but at the same time not be "found" under Rule B
therefore subjecting its property to attachment under the
Court's admiralty jurisdiction.  Although the case law regarding
this distinction is not uniform or even clear, in the absence of
controlling authority in this Circuit, this Court views
considering these issues separately to be the better rule and
will apply it here. Compare British Marine PLC v. Aavanti
Shipping & Chartering Ltd., 2014 WL 2475485, at *7 (E.D.N.Y.
2014) (requirement of Supplemental Rule B(1)(a) that a defendant
not be "found" within the district "contemplates that a court
will lack *in personam* jurisdiction over the defendant when it
orders that a writ of attachment be issued," and "[i]n such a
proceeding, the court's coercive authority is coterminous with
the scope of its jurisdiction, and limited to the extent of the
defendant's interest in the attached property; that authority
does not extend to the exercise of *in personam* jurisdiction over
a Rule B defendant[]") (citing Shipping Corp. of India Ltd. v.
Jaldhi Overseas Pte Ltd., 585 F.3d 58, 69 n.12 (2d Cir. 2009)),

with _West of England Ship Owners Mut. Ins. Ass'n (Luxembourg) v._

_McAllister Bros., Inc._, 829 F. Supp. 122, 123 (E.D. Pa. 1993) (a

defendant may be "found" under traditional personal jurisdiction

principles, but still not be "found" for a Rule B attachment

because it cannot be served within the district and "[a]

defendant is found within the district only when (1) it is

subject to _in personam_ jurisdiction _and_ (2) it can be found for

service of process within the district[]") (citing 7A Moore's

Federal Practice B.06, p. B251) (emphasis added) (other citation

omitted).[3]

---

[3] Defendants argue that once the invalid writ of attachment is
vacated, Plaintiffs' complaint must be dismissed for lack of
personal jurisdiction. The Court is unpersuaded on the present
record that it lacks personal jurisdiction over Defendants.
Plaintiffs' claims arise out of Draw Events' contract with New
Jersey entities Cooper's Ferry and the Adventure Aquarium, its
subcontract with Plaintiffs, and its organization and management
of the Tall Ship event held at least in part in New Jersey.
Those claims and these contacts together suggest that Draw
Events and its principal may be subject to specific jurisdiction
in this Court and have sufficient contacts with New Jersey to
exercise personal jurisdiction over them without violating
traditional due process principles. Fed. R. Civ. P. 4(k)(1)(A)
(providing that a defendant is subject to the jurisdiction of a
United States district court if the defendant "is subject to the
jurisdiction of a court of general jurisdiction in the state
where the district court is located"); _Miller Yacht Sales, Inc._
_v. Smith_, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted) ("A
federal court sitting in New Jersey has jurisdiction over
parties to the extent provided under New Jersey state law.");
_IMO Indus., Inc. v. Kiekert AG_, 155 F.3d 254, 259 (3d Cir. 1998)
(providing that the New Jersey long-arm statute "permits the
exercise of personal jurisdiction to the fullest limits of due
process"). Nonetheless, the Court will deny that aspect of
Defendants' motion without prejudice and direct the parties to
discovery on that issue.

Defendants do not contend, however, that they were amenable to service in this district. That is fatal to any contention that they can be "found" here and not subject to a Rule B attachment. See West of England Ship Owners, 829 F. Supp. at 123 (explaining that service upon a corporation may be made upon an officer, a managing or general agent or any other agent authorized by appointment or by law to receive service of process, citing Fed. R. Civ. P. 4(d)); STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd., 560 F.3d 127, 130-31 (2d Cir. 2009) (citation omitted) (stating that "[a] maritime attachment is precluded under [Rule B] only if the defendants have engaged in sufficient activity in the district or the cause of action has sufficient contacts with the district to permit the court to exercise *in personam* jurisdiction over the defendant," and the defendant "can be found within the geographical confines of the district for service of process"); see also Supplemental Rule B, Notes of Advisory Committee on Rules, July 1966 (explaining that the rules have never defined the clause, "if the defendant shall not be found within the district," and "the subject seems one best left for the time being to development on a case-by-case basis," and further explaining that a defendant is found where "a corporate defendant has appointed an agent within the district to accept service of process but is not carrying on activities there

sufficient to subject it to jurisdiction [,] (<u>Seawind Compania,
S.A. v. Crescent Line, Inc.</u>, 320 F.2d 580 (2d Cir. 1963)), and a
defendant is found where the foreign corporation's activities in
the district are sufficient to subject it personally to the
jurisdiction, and there is in the district an officer on whom
process can be served (<u>United States v. Cia. Naviera
Continental, S.A.</u>, 178 F. Supp. 561 (S.D.N.Y. 1959))); <u>id.</u> Dec.
2000 ("[M]aritime attachment and garnishment are available
whenever the defendant is not found within the district, a
concept that allows attachment or garnishment even in some
circumstances in which personal jurisdiction also can be
asserted.").

Defendants therefore have failed to demonstrate that
Plaintiffs have not met the second requirement for a valid Rule
B writ of attachment.

**3.    Whether the garnishee was in possession of Defendants'
property at the time the writ of attachment was served**

For the third factor, whether the garnishee – Cooper's
Ferry – was in possession of Draw Events' property at the time
the writ of attachment was served, the Court does not have
enough information on the current record and briefing to
determine that Cooper's Ferry did not have possession.

Plaintiffs argue that the settlement funds remained in
Cooper's Ferry's possession up until the point Draw Events

13

deposited the check days after the writ was served.  Defendants

argue that the February 5, 2018 mailing of the check is the date

Cooper's Ferry lost possession of Draw Events' property – i.e.,

the settlement check.  The Court does not find Plaintiffs' cited

case law to be fully dispositive nor is Defendants' position

supported by the case law they cite.

"Streamlined Rule B practices developed [] out of the

concern that ships might set sail quickly." Shipping Corp. of

India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 70 (2nd

Cir. 2009).  "Maritime attachments arose because it is often

more difficult to obtain jurisdiction over parties to a maritime

dispute than parties to a traditional civil action.  Maritime

parties are itinerant, their assets transitory.  Thus, the

traditional policy underlying maritime attachment has been to

permit the attachment of assets wherever they can be found,

thereby obviating the need for a plaintiff to 'scour the globe'

to find a proper forum for suit, or property." STX Panocean (UK)

Co., Ltd. v. Glory Wealth Shipping Pte Ltd., 560 F.3d 127, 130

(2d Cir. 2009).

However, "[a]s a remedy *quasi in rem*, the validity of a

Rule B attachment depends entirely on the determination that the

*res* at issue is the property of the defendant at the moment the

*res* is attached." Shipping Corp of India, 585 F.3d at 69.

Plaintiffs rely upon a case from Florida state court, but the

Court does not find it directly on point.

In Arnold, Matheny and Eagan, P.A. v. First American Holdings, Inc., 982 So. 2d 628, 631 (Fla. 2008), a bank served a writ of attachment on a law firm holding for its client in its trust account settlement funds which the bank sought to attach. It was determined that at the time the writ was served, the funds remained in the trust account even though three days before the firm had wrote and mailed a check to the client. The bank argued that it was the law firm's duty to stop payment on the check once the writ of attachment was served on it, while the law firm argued that it had lost possession of the funds once it wrote and mailed the check.

The Florida Supreme Court determined under Florida's garnishment statute and the related provisions of Florida's Uniform Commercial Code ("U.C.C.") that "funds remain in the garnishee's possession and control, even though a check has been written and delivered to the payee, if the check has not been presented for payment," and the Florida "statute imposes a duty on garnishees to issue a stop payment order on a check that has not yet been presented for payment if a garnishee has the ability to do so." Arnold, Matheny and Eagan, P.A., 982 So. 2d at 635.

While instructive and factually similar,[4] Plaintiff offers no explanation as to why a New Jersey federal court sitting in admiralty should choose a Florida Supreme Court case interpreting Florida's version of the UCC as the rule of decision. Indeed, the Court has searched the submitted briefs and can find no case cited by either side that squarely addresses the issue now before the Court – who owns funds behind a check written out and held by an agent acting at the direction of the sender with instructions to deliver the check to the payee, but not yet delivered. Nor do the parties explain whether the Court should apply federal common law, analogous bodies of federal law such as bankruptcy,[5] New Jersey statutory law or case law, of the law of some other state such as Minnesota to the issue at hand.

Cases cited by the Defendants are not particularly helpful.

---

[4] This case and the Arnold are similar in that the recipient of the writ is also the check writer and has given up possession of the draft with the intent that it be negotiated by the payee and honored. The cases are different in that in this case the draft is still in the hands of the payor's agent at the time the writ was served and has not yet been physically transferred to the payee as it was in Arnold. If anything, this makes Arnold more persuasive not less so in the sense that an agent would be presumed to honor its principal's direction to return the check to the principal.

[5] See, e.g., Barnhill v. Johnson, 503 U.S. 393 (1992) (holding as a matter of the bankruptcy law of preferences that a transfer of property made by check is deemed to occur on date check is honored rather than date of payee's receipt of check).

Defendants set out a long string cite of state court decisions from states other than New Jersey that stand for the proposition that where a garnishee has made out and delivered the check to the payee there is no obligation to stop payment.  See, e.g., Central Security & Alarm Co., Inc. v. Mehler, 125 N.M. 438 (1998)(where garnishee received writ of garnishment after garnishee had issued and delivered checks to payee garnishee had no duty to stop payment on the checks, and thus, the check proceeds were no longer in garnishee's possession or control and were not subject to the writ of garnishment).

But this case is factually dissimilar in a potentially important way.  Unlike the cases cited by Defendants, the check at issue here had not yet been delivered (although subject to instructions to do so) to the payee but remained in the hands of the payor's agent.  Defendants make no effort to explain why cases involving actual delivery of the check should govern the facts of this case where no delivery has occurred.  And like Plaintiff, they make no effort to explain why these disparate state court decisions presumably applying the statutory and common law of their jurisdictions should be persuasive authority to a District of New Jersey court exercising admiralty jurisdiction.

Consequently, on the current state of the parties' briefing, the Court finds that Defendants have not met their

burden of showing that the third requirement for a valid writ of attachment is lacking such that the extinguishment of the writ is warranted.

**4. Whether there is a statutory or general maritime law proscription to the attachment**

The U.S. Supreme Court has instructed, "To ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel was involved in the dispute, as we would in a putative maritime tort case.  Nor can we simply look to the place of the contract's formation or performance.  Instead, the answer depends upon the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." Norfolk Southern Ry. v. James N. Kirby, Pty Ltd., 543 U.S. 14, 24 (2004).

Defendants argue that Plaintiffs' services performed for the Tall Ship event were not maritime activities.  Defendants' brief belies their own contention, however.  Defendants say:

> In the case of Plaintiff, Hays Tug, the rental of the floating dock should not be considered a vessel or a maritime use of the structure.  The dock merely sat next to a pier and allowed for the safe entrance and exit of the event goers from the Tall Ships.

> Similarly, the majority of the amounts sought by Plaintiff, Pollution Solutions of New Jersey, LLC doing business as River Services was for repair work to one of these floating docks.

> Finally, the amounts sought by Plaintiff General Marine and Industrial Services, Inc. were for a crane that merely placed and removed a gangway.

18

> None of these items or activities qualify as maritime
> and consequently, each of these Plaintiffs should not be
> permitted to sustain these various causes of action in
> Federal Court under maritime jurisdiction.

(Docket No. 24-1 at 22.)

Adding the word "merely" before the description of

Plaintiffs' services does not negate the unquestionably maritime

nature of those activities.  Plaintiffs cite numerous cases to

support that the chartering and towing of barges, the services

to repair or maintain barges, the towing and servicing of

vessels, the rental and servicing of docks, and the use of a

crane to retrieve a deflated vessel are all activities that are

maritime in nature.  The ALLIGATOR, 161 F.3d 37 (3d Cir. 1908);

Marina One, Inc. v. Jones, 29 F. Supp. 3d 669 (E.D. Va. 2014);

Baltimore Line Handling Co. v. Brophy, 771 F. Supp. 2d 531 (D.

Md. 2011); Houston-New Orleans, Inc. v. Page Engineering Co.,

353 F. Supp. 890 (E.D. La. 1972); Hinkins Steamship Agency v.

Freighters Inc., 351 F. Supp. 373 (N.D. Ca. 1972);

Howmet Corp. v Tokyo Shipping Co., 320 F. Supp. 975 (D. Del.

1971); Mayer Boat Works, Inc. v. Bright Marine Basin, Inc., 265

F. Supp. 352 (E.D. Pa. 1966).  Based on the allegations in

Plaintiffs' complaint regarding claims for payment for their

services during the Tall Ship event, and without any compelling

argument by Defendants to the contrary, the Court finds that

Plaintiffs' claims are maritime in nature such that the fourth

19

requirement for a valid writ of attachment has been met.

Because the first, second and fourth Rule B requirements have been met, and Defendants have not met their burden to invalidate the third element, the Court will not vacate the writs of attachment at this time. The parties shall return to Magistrate Judge Schneider to resume the discovery process that has been stayed pending the resolution of Defendants' motion to dismiss.[6]

## 5. The viability of Plaintiffs' claims against Craig Samborski individually

Samborski argues that Plaintiffs' claims against him individually must be dismissed because Plaintiffs' complaint conclusorily names him as a defendant simply because he is the sole member of Draw Events LLC, which is insufficient to

---

[6] Plaintiffs filed a motion to compel the garnishees' answers to interrogatories, and Defendants and the garnishees filed a motion to stay Judge Schneider's consideration of that motion pending the resolution of Defendants' motion to dismiss because success on their motion would moot Plaintiffs' motion. Judge Schneider agreed. (Docket No. 51.) Judge Schneider also noted in his letter order:

> As the Court also relayed to the parties on numerous occasions, the parties are urged to meet and confer to settle the case. The transaction costs to litigate the case will far exceed the amount in dispute. The parties' respective settlement demand and offer are close enough that the parties should be able to close the gap. The alternative is years of expensive litigation in a case that is likely to settle sooner or later.

(Id.) Judge Schneider's observation is no less true today and is perhaps even more so in light of this Opinion.

maintain a claim against him. Samborski also argues that Plaintiffs should be sanctioned under Federal Civil Procedure Rule 11 as well.

"In order to hold a corporate officer liable, a plaintiff must pierce the 'corporate veil,' which requires a showing that: (1) the corporation is organized and is operating as a mere instrumentality of a shareholder, (2) the shareholder uses the corporation to commit fraud, injustice or circumvent the law, and (3) the shareholder fails to maintain the corporate identity." Spark Innovators Corp. v. Tele Marketers, Inc., 2014 WL 2773661, at *7 (D.N.J. 2014) (citing Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 171–72 (3d Cir. 2002)) (other citation omitted).

The factors in determining whether to pierce the corporate veil have not been applied in equal force to individually held limited liability companies in light of their special characteristics, see Pactiv Corp. v. Perk-Up, Inc., 2009 WL 2568105, at *5 (D.N.J. 2009), and where appropriate, courts of New Jersey have looked beyond the corporate form to the functional reality behind it, see Star Video Entertainment, L.P. v. Video USA Associates 1 L.P., 601 A.2d 724, 727 (N.J. Super. Ct. App. Div. 1992).

Here, Plaintiffs name Samborski in their complaint because he is the sole member and owner of Draw Events, Samborski's

21

address is the same as Draw Events (Samborski's home), and

Plaintiffs communicated with Samborski to form their contracts.

Based on these facts, the Court does not find Plaintiffs' claims

against Samborski to be dismissible at this time.[7]  In addition

to discovery related to the garnishment and the actions of the

garnishees, along with discovery concerning Draw Events'

contacts with New Jersey for the traditional personal

jurisdiction analysis, Plaintiffs should be entitled to some

discovery into Samborski's actions relative to the corporate

entity for which he is the sole member and owner.  Because the

Court will not dismiss Plaintiffs' claims against Samborski,

Plaintiffs' naming of Samborski as a defendant is not

---

[7] It is well settled that a pleading is sufficient if it contains
"a short and plain statement of the claim showing that the
pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).
Following the Twombly/Iqbal standard, the Third Circuit has
instructed a two-part analysis in reviewing a complaint under
Rule 12(b)(6).  First, the factual and legal elements of a claim
should be separated; a district court must accept all of the
complaint's well-pleaded facts as true, but may disregard any
legal conclusions.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210
(3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950).  Second, a
district court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff has a
"'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct.
at 1950).  A complaint must do more than allege the plaintiff's
entitlement to relief.  Id.; see also Phillips v. Cnty. of
Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  Although the
question is a close one, Plaintiff has alleged sufficient facts
to make out a plausible claim of disregarding the corporate
form.

sanctionable under Rule 11.[8]

## CONCLUSION

The writs of attachment and garnishment will remain valid
while the parties return to the discovery process, which shall
include discovery related to Defendants' contacts with New
Jersey, Samborski's operations as the sole member and owner of
Draw Events, the circumstances surrounding the garnishee's
agent's possession of the check written for Draw Events at the
time the writ was served on Cooper's Ferry, and any other

---

[8] Rule 11 provides,

> By presenting to the court a pleading, written motion, or
> other paper—whether by signing, filing, submitting, or
> later advocating it—an attorney or unrepresented party
> certifies that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable
> under the circumstances:
>
> (1) it is not being presented for any improper purpose,
> such as to harass, cause unnecessary delay, or needlessly
> increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are
> warranted by existing law or by a nonfrivolous argument for
> extending, modifying, or reversing existing law or for
> establishing new law;
>
> (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary
> support after a reasonable opportunity for further
> investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the
> evidence or, if specifically so identified, are reasonably
> based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

matters related to the substance of Plaintiffs' claims.  The denial of Defendants' motion to dismiss will be without prejudice to their right after discovery to reassert their arguments or raise additional bases for the extinguishments of the writs, the dismissal of Plaintiffs' complaint on jurisdictional grounds, or a judgment in their favor on the substantive merits of Plaintiffs' claims.

An appropriate Order will be entered.


Date: January 25, 2019                s/ Noel L. Hillman
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.